**Karl G. Anuta,** OSB No. 861423
LAW OFFICE OF KARL G. ANUTA, P.C.
735 SW First Avenue
Portland, Oregon 97204
Telephone: (503) 827-0320
Fax: (503) 228-6551
kga@integra.net

**Mike Sargetakis,** OSB No. 174607
OXBOW LAW GROUP, LLC
620 SW Main Street, Suite 706
Portland, Oregon 97205
Telephone: (503) 694-9362
mike@oxbowlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| ANTHONY BUTLER and JOANN BUTLER, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK ELLSBERG, AND VICTORIA ELLSBERG, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br> Personal Injury and Property Damage <br><br> *Jury Trial Requested* |

Plaintiff alleges:

**FIRST CLAIM FOR RELIEF**

**Jurisdiction**

1.

At all times material, plaintiffs resided in Sherwood Oregon, and defendants were residents of Vancouver Washington.

Page 1 - COMPLAINT

2.

Diversity of citizenship exists, and jurisdiction is proper under 28 U.S.C. 1332(a)(1).

**Common Facts**

3.

At all times material, defendants or at least Patrick Ellsberg were also the owners of property located at 37470 5th Street in Neahkanie, Oregon. That house is next door to property owned by plaintiffs' Joann and Tony Butler at 37490 5th Street in Neahkanie, Oregon. Defendant's Neahkanie (aka Manzanita) property is also slightly uphill of plaintiffs' property.

4.

In May 2018, the defendant's had a guest, Claudia Ellsberg visiting the Ellsberg property in Neahkanie, Oregon. At all times material, either Claudia Ellsberg or alternatively, defendant Victoria Ellsberg, was acting on behalf of and as an agent for defendant Patrick Ellsberg.

5.

On May 12, 2018, an agent of defendant Patrick Ellsberg applied herbicide while on the Ellsberg property located at 37470 5th Street in Neahkanie, Oregon. The herbicide was applied either near, or in some cases even across and directly onto, the property of the plaintiffs.

6.

The herbicides or chemicals used in the May 12, 2018 Ellsberg application are commonly called "Crossbow." That herbicide included at least the following chemicals: 2,4-Dichlorophenoxyacetic Acid in Butoxyethel Ester form, Triclopyr-BEE, (specifically 3, 5, 6-trichloro-2-pyrindinyloxyacetic acid in Butoxyethyl Ester form), and other petroleum distillates or solvents.

7.

At the time of the application of chemicals by defendants' some of the windows and/or doors on the plaintiffs' house - including but not limited to some of those that directly face the Ellsberg property - were open. At the time of the application, plaintiff Tony Butler was in the yard behind plaintiffs' house on a riding mower, and plaintiff Joann Butler was in plaintiffs' house by an open window that faced the Ellsberg property. At the time of the application there was a light breeze blowing, from the defendants' property towards the ocean, which is downhill of both the defendant's and the plaintiffs' property.

8.

Shortly after the defendants application of herbicide, one or both plaintiffs could feel chemicals on their bodies. One or both plaintiffs could also smell chemicals. One or both plaintiffs could also taste chemicals. Shortly after the application one or both plaintiffs began to exhibit symptoms of chemical exposure including vomiting, headaches, difficulty breathing, as well as swelling and rashes.

9.

Defendants did not have permission to deposit herbicides or chemicals onto plaintiffs' property, or onto the plaintiffs. Nor did defendants have permission to harm plaintiffs' property, or the plaintiffs.

10.

Plaintiffs reported the spray or drift to both the County Sheriff and to the Oregon Department of Agriculture (ODA), who conducted an investigation. The ODA representative also took vegetation samples on plaintiffs' property and took photos on both properties. Defendants were aware of plaintiffs reports, and defendants had the opportunity to participate in both the ODA investigation and to talk with a Sheriff's Deputy. Plaintiffs also submitted a Report Of Loss (ROL) to the ODA.

11.

During the application of herbicide, defendants (or their agent) caused or allowed one or more of the chemicals to be sprayed on, or to move or drift onto, plaintiffs' property. Those chemicals landed on the plaintiffs, on their landscaping plants, on their house and deck, and they traveled inside of plaintiffs' home through the open windows or doors. The ODA samples from plaintiff's landscaping tested positive for the chemicals applied at the Ellsburg property. Plaintiffs' property - both exterior and interior - has also tested positive for the chemicals. In addition, the plaintiffs themselves have both tested positive for the chemicals used by defendants. Plants on plaintiffs' property have regularly exhibited - and as of the date of this Complaint continue to exhibit - symptoms of phenoxy herbicide poisoning such as those shown in these two photographs:




12.

Some or all of the herbicides and/or chemicals (or their component parts) that were used by defendants' are known to have damaging effects on many types of vegetation. Some or all of the herbicides and/or chemicals (or their component parts) that were used by defendants' are known to have damaging effects on humans.

13.

The Label on the chemicals used by defendants' specifies that the chemical is **not** to be applied in "sensitive areas" which include residential areas. The Label on the chemicals used by defendants' specifies to **not** spray when wind is blowing toward ornamental plants, and also to **only** apply the product if the wind direction favors "on-target deposition" **and** there are no sensitive areas (such as residences) within 250 feet downwind. The Label also specifies that the product is **not** to be applied in a way that will allow it to contact any person, either directly or through drift.

14.

Based on at least the Label of the chemicals, one or more of defendants (and/or their agent) knew or reasonably should have known that the chemicals used were lethal or highly toxic to ornamental trees and plants, and also potentially hazardous to animals and humans. Based at least on the Label of the chemicals one or more of defendants (and/or their agent) knew or should have known that such chemicals should not be used in a residential neighborhood, upwind and uphill of a residential home, particularly when there were people in and around that home.

15.

One or more of defendants (and/or their agent) also knew or reasonably should have known that using these chemicals, in this location, with the existing topography, and under the weather conditions then present, could cause deposits of the chemical onto neighboring property and that such deposits could cause damage to and/or interference with the use and enjoyment of neighboring property.

16.

One or more of defendants' actions were in contravention of applicable Oregon statutory law, including one or more of the following:

(a) ORS 634.372(2) (applying pesticides inconsistent with the Label); and/or

(b) ORS 634.372(4) (performing a pesticide application in a faulty, careless, or negligent manner).

17.

One or more of the defendants' actions were in contravention of one or more of the limitations or warnings specified on the chemical Label that was approved pursuant to the Federal Insecticide Fungicide and Rodenticide Act, (FIFRA) 7 USC § 136a, *et seq.* for the herbicide used by defendants. Use of a chemical in a manner inconsistent with Label restrictions is a violation of Federal Law, specifically 7 USC §136j(a)(2)(G).

18.

A use of a chemical in a way that results in either: (i) a violation of state law; or (ii) a violation of federal law; or (iii) a trespass onto property of another, is not reasonable or prudent.

**Trespass**

19.

Defendants conduct, either directly or through their agent, willfully - and either negligently, recklessly, or intentionally - has caused one or more trespasses on plaintiffs' property.

**Damages**

20.

The placement and/or movement of the chemicals used on defendants property onto plaintiffs' property caused damage to and contamination of parts of the plaintiffs' property. Plaintiffs will need to severely prune or ultimately replace landscaping on their property, which is currently estimated to cost approximately $26,000. Plaintiffs will also need to pressure wash and then seal and reseal portions of the exterior of their home, which has been estimated to cost at least $7,900.

1. Plaintiffs will in addition need to remove and decontaminate all porous items inside their house, as well as to have the air ducts and other areas of the interior of the house cleaned of contaminants and to seal and/or repaint most if not all walls and ceiling in the interior of their home, which has been estimated to cost at least $141,000. Plaintiffs have incurred medical expenses in the amount of at least $13,000 to date for Joann Butler, and at least $4,900 to date for Tony Butler. Plaintiffs have also incurred out-of-pocket mileage to medical appointments and increased mileage and expenses for business travel in the amount of at least $3,000 to date.

21.

Plaintiffs have also potentially suffered a diminution in value to their property as a result of the chemical contamination, in an amount not to exceed $300,000. Plaintiffs have, in addition, lost the use and enjoyment of their home, for over 18 months to date. The cost of obtaining substitute comparable lodging is estimated to be at least $395,000 to date, all to plaintiffs' economic damages in a sum to be proven at Trial.

22.

The presence of the chemicals sprayed by or on behalf of defendants on the plaintiffs' property (including in the plaintiffs' home) has caused significant interference with plaintiffs' use and enjoyment of their property. Plaintiffs have also endured multiple medical visits and treatment to try to address their exposure to the chemicals applied by or for defendants. Plaintiffs have suffered anger, frustration, worry, and interference with their lives. Plaintiffs also appear to now be much more susceptible to symptoms caused by the chemicals applied by or for the defendants. Plaintiffs have periodically tried to return to their property, but when they do they often experience symptoms such as headaches, respiratory restrictions, and even weeping rashes or swelling of the sort seen in the following two photos:



all to plaintiffs' non-economic damages in a sum the jury determines to be fair, but in no event to exceed $900,000.

**Injunctive Relief**

23.

Unless the defendants are enjoined from further conduct of the type alleged, plaintiffs will continue to suffer significant, and likely irreparable injuries. Plaintiffs have no adequate remedy at law to prevent such future conduct. Plaintiffs request an injunction prohibiting future conduct by defendants that would result in additional trespass, over spray, or movement of chemicals onto plaintiffs' property.

**Attorney Fees and Double/Treble Damages**

24.

Since defendants' conduct wilfully injured trees or shrubs on plaintiffs' property, pursuant to ORS 105.810(2) plaintiffs are entitled to recover the reasonable costs of

litigation including investigation costs and attorney fees.

25.

For the same reason, pursuant to ORS 105.810(1) plaintiffs are also entitled to treble damages for the cost of the landscape work needed as a result of defendants' conduct. Alternatively, since defendants' conduct at least casually or involuntarily injured trees or shrubs on plaintiffs' property, pursuant to ORS 105.815(1) plaintiffs are entitled to double damages for the cost of the landscape wrok needed as a result of defendants' conduct.

**SECOND CLAIM FOR RELIEF**

**Nuisance**

26.

Plaintiffs reallege paragraphs 1-23 and further allege:

27.

Defendants' conduct has unreasonably and substantially interfered with plaintiffs' ability to use and enjoy their property, and as such constitutes a nuisance.

**THIRD CLAIM FOR RELIEF - COUNT I**

**Negligence**

28.

Plaintiffs reallege paragraphs 1-18 and 20-22, and further allege:

29.

Defendants' conduct was unreasonable in one or more of the following ways:

A. In failing, and/or neglecting to apply or use the chemicals in a way so as to prevent the chemicals from moving onto plaintiffs' property, when defendants knew or reasonably should have known that failure to apply chemicals in a proper manner could result in the chemicals landing on plaintiffs' property and causing damage to plaintiffs and/or their property;

B. In applying chemicals on a day when wind was present, when defendants knew or reasonably should have known that applying chemicals in such conditions could result in the movement of chemicals onto neighboring property or persons;

C. In failing and/or neglecting to comply with the FIFRA approved Label or instructions on the chemicals being applied, when defendants knew or reasonably should have known that failing to comply with the Label instructions could result in chemicals potentially moving onto neighboring property or persons;

D. In applying chemicals in a fashion that defendants knew or reasonably should have known was inconsistent with the FIFRA approved Label provided with the chemicals, when defendants knew or reasonably should have known that applying chemicals in a fashion inconsistent with labeling or recommendations could result in chemical movement onto neighboring property or persons;

E. In failing to dilute the chemicals as required by the FIFRA approved Label, when defendants knew or reasonably should have known that applying inadequately diluted chemicals could result in damage to neighboring property or persons;

F. In applying the chemicals in a faulty, careless, or inappropriate manner, when defendants knew or reasonably should have known that applying chemicals in such a manner could result in the chemicals migrating onto neighboring property or persons;

G. In choosing to apply chemicals that defendants knew or reasonably should have known could cause severe damage to neighboring landscaping or persons;

H.  In failing and/or neglecting to warn the plaintiffs of their intention to apply chemicals, so that plaintiffs could take steps to try to prevent damage;

I.  In failing and/or neglecting to adequately supervise their agent to ensure the agent had read the Label and/or was complying with the Label restrictions on the chemicals used, when defendants knew or should have known that failure to adequately supervise an agent in such circumstances could lead to deposition of chemicals on neighboring property or persons; and,

J.  In acting in one or more ways as yet unknown to plaintiffs, that caused or allowed defendants' chemicals to move onto plaintiffs' property, when defendants knew or reasonably should have known that doing so would potentially cause a trespass or harm to neighboring property or persons.

**COUNT II**

**Negligence Per Se**

30.

Plaintiffs reallege paragraph 28, and further allege:

31.

Defendants were Negligent Per Se in violating one or more state and/or federal laws previously alleged.

32.

Plaintiffs are within the class of person intended to be protected by ORS 634.372 and/or 7 U.S.C. § 136j(a)(2)(G). Plaintiffs' injuries are the type that one or both statutes were intended to prevent.

////

////

////

**FOURTH CLAIM FOR RELIEF**

**Abnormally Dangerous Activity**

33.

Plaintiffs reallege paragraphs 1-25, and further allege:

34.

The conduct of the defendants, in an area with a number of residences as well as people and sensitive landscaping plants nearby, and in this type of topography and weather conditions present, involved a high degree of risk of harm to adjoining property or persons. The state and federal laws that govern chemical application were specifically enacted (at least in part) because of state and/or federal legislative recognition of the need to prevent the type of harm that plaintiffs have now suffered.

35.

Defendants appear to have been either unable or unwilling to eliminate the risk of harm from their conduct. The use of poisonous chemicals in a residential area, and in a way that is likely to cause movement of such chemicals onto the property of another, is not appropriate or ordinary. The harm that has already resulted from defendants' conduct is significant. Under the circumstances, the defendants' conduct involved one or more abnormally dangerous activities, for which defendants should be held strictly liable.

WHEREFORE plaintiffs request:

1  Judgment against defendants for economic and non-economic damages;

2  On the First, Second, and Fourth Claims for Relief, for injunctive relief;

3  For Double or Treble the tree/plant repair or replacement damages;

4  For plaintiffs' attorney fees;

5  For plaintiffs' investigative expenses, as well as plaintiffs' costs and

1        disbursements; and,

2    6   For such other relief as the court deems equitable and just under the
3        circumstances.

4   Signed this 9th day of January, 2020.

6                                    LAW OFFICE OF KARL G. ANUTA, P.C.

7                                    */s/ Karl G. Anuta*
                                     KARL G. ANUTA (OSB #861423)
8                                    kga@integra.net
                                     Of Attorneys for Plaintiff and Trial Attorney
9                                    Federal ID 26-1488415